WEST MISSOURI POWER CO. v. CITY OF WASHINGTON, WASHINGTON COUNTY, KAN., et al.

No. 1271.

Circuit Court of Appeals, Tenth Circuit.

Nov. 27, 1935.

Rehearing Denied Jan. 2, 1936.

Frank C. Baldwin, of Concordia, Kan. (C. W. Burch, B. I. Litowich, and Larue Royce, all of Salina, Kan., and Charles L. Hunt, of Concordia, Kan., on the brief), for appellant.

Ralph T. O'Neil, of Topeka, Kan. (Farel R. Lobaugh, of Washington, Kan., and John D. M. Hamilton, Barton E. Griffith, and Peter F. Caldwell, all of Topeka, Kan., on the brief), for appellees.

Before PHILLIPS, McDERMOTT, and BRATTON, Circuit Judges.

PHILLIPS, Circuit Judge.

The West Missouri Power Company, hereinafter called the Power Company, brought this action to enjoin the City of Washington, Kansas, hereinafter called the City, from issuing certain bonds to provide funds with which to construct "an electric distributing system, power plant building, and appurtenances thereto, for the purpose of supplying said city and its inhabitants with electric light and power." From a decree dismissing the bill the Power Company has appealed.

On August 15, 1933, the governing body of the city adopted Ordinance No. 357, which provided for the submission to the electors of the city at a special election to be held on September 12, 1933, between the hours of 8 a. m., and 6 p. m. the following question: "Shall the City of Washington, Kansas, issue $88,000 in bonds for the purpose of erecting and construction of an electric light and power distributing system, power house, and appurtenances thereto for the purpose of supplying said City and its inhabitants with electric light and power?" It designated the polling place and the judges and clerks of election.

The notice of election stated that the bonds were to be issued "for the purpose of erecting an electric distributing system, power plant building, and appurtenances thereto, for the purpose of supplying said city and its inhabitants with electric light and power." It was signed only by the mayor and city clerk.

The ordinance and notice were published simultaneously. The ballot stated the purpose of the bond issue in the same language as the notice.

At the election 506 votes were cast in favor, and 254 votes against the issuance of such bonds.

Counsel for the Power Company contend that 12—801, 12—802, and 10—120, R.S.Kan., 1923, require a notice of such an election to be signed by a majority of the governing body of the city, and since the notice in the instant case was not so signed, the election was ineffectual to authorize the issuance of such bonds.

The purpose of such a notice is to inform the voters. The sole function of the signatures is to show authenticity. We are of the opinion that the signatures of the mayor and clerk sufficiently indicated that the notice was authentic.

Furthermore, the Ordinance published simultaneously with the notice, fully informed the voters of the time, place and purpose of the election, and showed the notice was authentic.

In City of Perry v. Davis, 97 Kan. 369, 154 P. 1127, the court said: "The matter that was published gave to the electors of the city all the information concerning the election that would have been afforded if the law had been followed with literal exactness. The signature of the mayor could have added nothing to its force except by way of attesting its authenticity, and that was doubtless shown sufficiently for all practical purposes by the city clerk's signature. * * * Here an ordinance had been passed calling the election, and fixing the time and place of holding it, which covered the details required to be stated in the notice. * * * The ordinance may perhaps be given the force of a public law, rendering applicable the rule that a failure to give the required notice does not invalidate an election if the time and manner of holding it are fixed by statute."

The above decision rules the question here presented. We are in accord with it; and furthermore, the question being purely one of local law, we are bound by it.

Counsel for the Power Company contend that the notice was defective in that it did not clearly state the purpose of

the bond issue. They assert the city proposes to expend a substantial portion of the funds to be derived from a sale of the bonds to purchase and install generating equipment and that such equipment is not included in the phrase "and appurtenances thereto."

The question not only states what was to be constructed, but the purpose thereof, namely: to supply the City and its inhabitants with electric light and power. To do that, a generating plant would be essential. When the notice is read in its entirety, it is clear that the phrase "and appurtenances thereto," includes generating equipment.

In Kansas Electric Power Co. v. City of Eureka, 142 Kan. 117, 45 P.(2d) 877, 879, the Court in construing a notice of a special bond election which stated the purpose of the bond issue in substantially the same language as did the ordinance, notice and ballot involved in the instant case, said: "The fair import of the recitals on the ballot was that the $65,000 bond issue which the voters were asked to sanction would provide the requisite funds to procure the desired municipal light and power plant. It may be conceded that a critical analyst of language construction could make a specious argument that the recitals on the ballot only meant that the cost of a distributing system and the cost of a power plant building were to be met out of the bond issue, and that the words 'appurtenances thereto' referred to appurtenances restricted to the distributing system or to the power plant building or to both, but did not mean appurtenances to the power plant. But the election was held to take the opinion and judgment of common men and women who are not trained in the niceties of language; and it is undeniable that the concluding language of the ballot, 'for the purpose of supplying said city and its inhabitants with electric current for lighting, power and other purposes,' not only would lead the voters to assume that was exactly what they were voting for, but would tend to obscure the idea that it was only a part of a municipal plant they would get for their bond issue."

The remaining contentions may be disposed of summarily. Misrepresentations made during a campaign by public officials, or others will not vitiate an election. City of Oswego v. Davis, 97 Kan. 371, 154 P. 1124; Kansas Electric Power Co. v. City of Eureka, supra; Detroit United Railway v. Detroit, 255 U.S. 171, 179, 41 S.Ct. 285, 65 L.Ed. 570. A city is not required to obtain a certificate of convenience and necessity before installing a municipal light and power plant. Board of Public Utilities v. Kansas City P. & L. Co., 139 Kan. 842, 33 P.(2d) 320. A city may construct its own light and power plant and enter into competition with a privately owned plant operating under a nonexclusive franchise. Kansas Gas & Electric Co. v. City of Independence (C.C.A.10) 79 F.(2d) 32, 34; State of Oklahoma v. Handy (C.C.A.10) 71 F.(2d) 697; Knoxville Water Co. v. Knoxville, 200 U.S. 22, 26 S.Ct. 224, 50 L.Ed. 353.

The decree is affirmed and the costs will be assessed against the Power Company.