# SUPREME COURT,

## STATE OF KANSAS.

# JANUARY TERM, 1889.

PRESENT:

Hon. ALBERT H. HORTON, Chief Justice.
Hon. DANIEL M. VALENTINE, } Associate Justices.
Hon. WILLIAM A. JOHNSTON, }

The State of Kansas, *on the relation of Geo. B. Crocker, County Attorney,* v. R. H. Echols *et al.*

1. Elections and Voters—*Establishment of High School.* Where an election is legally called and held, under chapter 147 of the Laws of 1886, to determine whether a county high school shall be established, and at which a majority of the votes cast upon the proposition are in favor of the same, the proposition will be adopted, although it may not have received a majority of all the votes cast upon other questions submitted at the same election. (*Comm'rs of Marion Co. v. Winkley,* 29 Kas. 36.)

2. ———— *Failure to Publish Notice.* The time when such an election shall be held is not designated in the statute, but is to be fixed by the county commissioners, and public notice of the time and purpose of the election is required to be given by publication in a newspaper of the county, and by posting copies of the notice at each of the polling-places in the county at least ten days before the election. *Held,* That the giving of notice substantially in the manner directed by law is a prerequisite of the validity of such an election, and where there is a failure to post notices at any of the polling-places, and a large number of the electors of the county fail to vote upon the proposition, the election will be void.

1—41 kas.

*Original Proceeding in Mandamus.*

PETITION filed on December 15, 1887. The opinion, filed at the session of the court in February, 1889, states the material facts.

*Russell Wiggins,* and *J. D. McFarland,* for plaintiff.
*Shepard, Grove & Shepard,* for defendants.

The opinion of the court was delivered by

JOHNSTON, J.: This is an original action of *mandamus,* commenced in this court in the name of the state of Kansas, on the relation of the county attorney of Harper county, to compel the board of county commissioners and the county clerk of that county to make a canvass of the returns and declare the result of an election held in that county on the 8th day of November, 1887, upon a proposition then submitted to the voters of the county and voted upon to establish a county high school at the city of Attica, and also to appoint six persons, having the qualifications required by law, as a board of trustees for such high school.

It appears that at the October session of the board of county commissioners of Harper county, a petition was presented to the board requesting that an election be called for the purpose of submitting to the voters of Harper county a proposition to establish a county high school at the city of Attica. The prayer of the petition was granted by the board, and an election ordered to be held on November 8, 1887. Notice of the election was directed to be given by publication in the Anthony *Republican,* and by making due proclamation in the manner required by law. The election was held at the same time as the general election of that year for county officers, and on the Friday following the election the defendants met at the office of the county clerk and proceeded to canvass the returns of the election, and also the returns on the proposition to establish a county high school. It was found that 2,264 votes were cast

upon the proposition, and of these 1,397 were in favor of the proposition, and 867 were against it. It was also found that the highest number of votes cast at that election, as shown by the returns made to the county clerk for county officers, was 3,109 — that being the number of votes cast for county treasurer. The board of canvassers thereupon determined and declared that the proposition had not carried; and thereupon an application was made for and an alternative writ of *mandamus* awarded against the defendants, commanding them to reassemble and declare the proposition to have been carried, or show cause why they refused to do so.

Two objections are urged against the allowance of a peremptory writ: one, that the proposition did not receive a majority of all the votes cast at that election, and therefore failed; and another, that the election held was invalid because legal notice of the same was not given. Upon the first objection there is no room for controversy. The statute under which the election was held provides that the question of establishing a county high school shall, upon proper petition and notice, be submitted to the voters of a county at a general or special election, by the board of county commissioners; and it is further provided, that "after said election the ballots on said question shall be canvassed in the same manner as in the election for county officers, and if a majority of all the votes cast shall be in favor of establishing such high school," the county commissioners are then required to appoint trustees and otherwise provide for the maintenance of such school. (Laws of 1886, ch. 147, §§ 1, 2, 3.) The question presented is, whether the proposition must receive a majority of the highest number of votes that may be cast upon any question at that election, or whether a majority of those cast upon the proposition itself is sufficient to give the required consent. This question has been already considered and settled in an action arising on a substantially similar statute. In *Comm'rs of Marion Co. v. Winkley*, 29 Kas. 36, the validity of an election upon a proposition to allow a bounty for the growing and cultivation of hedge fences was under consideration, and the statute upon which

the election was held provided that "if a majority of the votes cast are for the bounty, they shall declare said law to be in full force and effect." That proposition was voted on upon the day on which the general election for township officers in the county was held, and it did not receive a majority of the votes cast at the township election, and it was therefore contended that the proposition was defeated. It was decided, however, that "the electors who were present at the polls, at the called election, and, while voting for township officers, did not vote upon the bounty proposition, are presumed to assent to the expressed will of the majority of those voting thereon." This is a controlling authority, and disposes of the first objection that has been made. (See also *County Seat of Linn Co.*, 15 Kas. 500; *Cass v. Johnson*, 95 U. S. 369.)

1. Valid election; proposition adopted.

The second objection is a more serious one, and must be held fatal to the election upon which the right to a peremptory writ is based. Section 2 of the statute under which the election was held expressly provides that twenty days' notice of such election shall be given in the same manner as all legal notices of general or special elections are given. The manner of giving such notification is by the posting of an election notice or proclamation in each of the places where the election is appointed to be held, and also by inserting the same in one of the newspapers published in the county, if any such are published therein. (Comp. Laws of 1885, ch. 36, § 5.) The required notice was properly published in the Anthony *Republican*, a newspaper published in Harper county, but it is admitted that the sheriff failed to post any notices of the election at the various polling-places of the county. Did this omission invalidate the election subsequently held? There is no more important step in an election than the giving of notice. It is essential to the validity of an election that notice should be given either by the law itself, or in the manner prescribed by the law. A well-defined distinction exists between general and special elections respecting the strictness to be observed in the manner of giving notice. In regard to general elections, the time for

their occurrence and the officers to be voted for are definitely fixed by law; and as the electors are presumed to know the law, they are charged with knowledge of the time and purpose of the election, and the mere failure of the sheriff or other officer to post up or publish an additional or other notice will not invalidate the election. In such cases the provisions requiring additional notices are regarded as directory, the non-observance of which will not generally vitiate the election. ( *Jones v. Gridley*, 20 Kas. 587; *Wood v. Bartling*, 16 id. 109; *Morgan v Comm'rs of Pratt Co.* 24 id. 71.) In special elections, like the one we are considering, where the time is to be fixed by some officer or tribunal, a very different rule must necessarily be applied. While the law furnishes the authority for calling and holding a special election, it does not generally designate the time when it is to be held. In such cases the electors depend upon the notice required to be given, and not upon any knowledge derived from the law itself; and hence the right to hold such election at a specified time is the notice prescribed by the statute. It is therefore a mandatory provision, and the courts generally hold it to be essential that the prescribed manner shall be followed in order to give validity to the election. This court has always held that the particular manner provided by statute for giving notice of a special election must be strictly pursued. In *George v. Oxford Township*, 16 Kas. 72, the validity of a special election held for the purpose of voting bonds, for which thirty days' notice was required to be given, was considered. Notice was given of that election, but only for fifteen days instead of thirty as the statute required; and it was held that the election depended for its validity upon the prescribed notice being given, and that if it was not given, the election must be held to be invalid. It was there stated that "where the time and place of holding the election are to be designated by some board or person, as in this case, and are not fixed by law, then the notice required by law must be given." Where the legal notice is not given, or there is a substantial departure from the direction of the law in the manner of giving the same, and a large number of the elect-

ors fail to vote, we must hold in conformity with earlier decisions, that the election held thereunder is void. (*Jones v. The State*, 1 Kas. 273; *Gossard v. Vaught*, 10 id. 162; *Wood v. Bartling*, 16 id. 109; *Kenfield v. Irwin*, 52 Cal. 165; *Hubbard v. Town of Williamstown*, 61 Wis. 397; *Morgan v. Gloucester City*, 44 N. J. Law, 137; *Beal v. Ray*, 17 Ind. 554; *Harding v. Rld. Co.*, 65 Ill. 90; *Stephens v. The People*, 89 id. 337; Cooley's Const. Lim. 603.) A large number of the electors of Harper county who participated in the election of November 8, 1887, failed to vote upon the high-school proposition. This omission may have resulted from the want of legal notice, or from the indifference of the voters; and, possibly, if all had been advised as the law requires of the submission of the proposition, it might have been defeated. There were 845 voters who failed to express their will as to the expediency of establishing a high school, and as has been seen, the proposition received a majority of only 530 of the votes cast thereon. If the 845 voters present and participating in the general election had been notified of the special election and had voted against the proposition, it would have been defeated by a majority of 315. There was a claim made, and some attempt to show, that the holding of the election was brought to the attention of the voters by other methods than those prescribed by the statute, and which were just as effectual. But as the statutory notice is a prerequisite to the validity of the election, it is needless to inquire further. It is conceded that the prescribed notice was not given; therefore the election must be held to be void, and the peremptory writ asked by the plaintiff must be denied.

2. Notice not given; void election.

All the Justices concurring.